CUBA, The (STROUT v.). See Case No. 13,-549. ,

CUBA, The (UNITED STATES v.). See Case No. 14,898.

CUBANA, The (FLETCHER v.). See Case No. 4,863.

---

## Case No. 3,460.

### CULBERG et al. v. The CONTINENTAL.

[3 Woods, 32.][1]

Circuit Court, D. Louisiana. April Term, 1877.

COLLISION—TOW AND TUG AT ANCHOR — SIGNALS.

1. A tug with two tows descending the Mississippi river caused one of her tows to collide with another tug anchored within 500 feet of the bank, at a place where the river was three-fourths of a mile wide. *Held*, that these facts unexplained throw the fault on the descending tug.

2. When a boat is lying.at anchor it is not necessary or proper for her to respond to the signals of passing steamers.

[Appeal from the district court of the United States for the district of Louisiana.

[In admiralty. Libel by Andreas Culberg and others to recover damages sustained by collision. There was a decree for libelants in the district court, and the claimants of the Continental appeal.]

Jos. P. Hornor and W. S. Benedict, for libelants.

B. Egan, for claimant.

WOODS, Circuit Judge. The libelants, who were the owners of the Swedish bark Mar-

---

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

guerite, brought this libel to recover $28,500, the estimated damage which was caused to their bark by a collision which they allege took place through the fault of the officers and crew of the tow-boat. On the afternoon of March 3, 1874, the Continental left the city of New Orleans for the mouth of the Mississippi river, having in tow the bark Bygdo lashed to her starboard side and the bark Marguerite lashed to her port side. About four o'clock the next morning the Continental with her tows ran into another tow-boat, the Rio Grande, which was lying at anchor in the river with two tows lashed to her, one on each side. The result of the collision was a considerable damage to the bark Marguerite.

The fact that the collision occurred with a boat lying at anchor, if she was in her proper place, would seem to make a prima facie case of negligence against the Continental, and, without explanation, to establish a claim for damages. The respondent has attempted to excuse the fault of the collision by throwing the blame upon the Rio Grande. It is alleged by way of excuse that the tow of the Rio Grande was anchored in the middle of the river at a place where the river was three-quarters of a mile wide, instead of being anchored near one or the other of the banks. This is disputed by libelants. The witnesses who speak directly to this point are Captain McClellan, of the Rio Grande, John Robinson, Theodore Crowell and J. E. Esnort. That she was not so anchored, but on the contrary, was anchored within four or five hundred yards of the right bank of the river is shown by the decided weight of the testimony. To rebut this evidence, the captain of the Continental, Robert West, says that the Rio Grande was anchored at the time of the collision about the middle of the river as near as he could judge. Reyberg, the master of the bark Marguerite, also testifies that the general course of the Continental was down the middle of the river. The libel itself alleges that the Continental was running down the middle of the river; that she descried lights ahead which were discovered soon after to be borne by a tow at anchor, consisting of the tow-boat Rio Grande with her tows; that some time thereafter, the said tow-boat Continental ran the said bark Marguerite into the said tow lying at anchor. It is on the evidence of these two witnesses and the averments of the libel that respondent relies to rebut the proof that the Rio Grande was near and within four or five hundred yards of the right bank of the river. The libel and the witness Reyberg both speak of the position of the Continental some time before the collision occurred. West, the captain of the Continental, is the only witness who speaks of the place in the river where the collision occurred, and he qualifies his testimony by saying "as near as I could judge."

This evidence can not overcome the testimony of so many witnesses who say that the Rio Grande was within four or five hundred yards of the right bank of the river. It seems to me that this point settles the case. If the Continental had kept her proper place in the river, had followed its thread as was her duty, the collision could not have occurred. But I am satisfied, from a perusal of the evidence, that the other faults charged against the Rio Grande are not sustained. The decided weight of the evidence is against the charge that the Rio Grande and her tows kept up their running lights while at anchor and thus deceived the officers of the Continental. Complaint is made that the Rio Grande did not answer the whistle of the Continental. Being at anchor it was not necessary or proper for her to respond.

Complaint is also made of the management of the Rio Grande by her officers when the collision was imminent. Even if there had been mistakes made, which is strenuously denied, there is no question that when the officers of the Rio Grande saw the danger of collision they did their best to avoid it. The fault lies further back, with the officers of the Continental, who seem to have been bewildered and to have lost their reckoning, and instead of keeping the middle of the river, veered over to the starboard side and ran into a tow at anchor. In my judgment, the sole fault is with the Continental, and her owners must pay the loss. There seems to be no dispute about the amount of damage suffered by the Marguerite. It was placed in the district court at $2,500. Let there be a decree for that sum, and costs of both courts in favor of libelants.